**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| GUMERSINDO MARTINEZ,<br><br>Plaintiff,<br>vs.<br><br>SERVECO NORTH AMERICA, LLC, TONY MILANO, TONI MILANO, CHRIS SCHALL, and MICHELE ZANIN,<br><br>Defendants. | : | Civil Action No.: |

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Plaintiff, Gumersindo Martinez ("Plaintiff"), by and through his undersigned counsel, brings this civil action against Defendants ServeCo North America, LLC, Tony Milano, Toni Milano, Chris Schall, and Michele Zanin (collectively "Defendants"), alleging as follows:

**NATURE OF THE ACTION**

1. This is an action for patent infringement, violation of the Defend Trade Secrets Act and related claims under Georgia statutory and common law, arising from Defendants unauthorized and unlawful use, development, and marketing of a product that is a direct infringement against Plaintiff's Intellectual Property, Patent No. US 12,618,781 B2.

2. Plaintiff seeks injunctive relief, damages, disgorgement of profits, costs, and attorneys' fees.

## JURISDICTION AND VENUE

3. Plaintiff brings this lawsuit for (1) federal patent infringement, in violation of Title 35 of the United States Code (35 U.S.C. § 271); (2) violation of the Defend Trade Secrets Act (DTSA) (18 U.S.C. § 1836); and (3) state law claims for deceptive trade practices under Georgia law. Plaintiff seeks remedies available pursuant to 35 U.S.C. §§ 281, 283, 284, and 285 because this action arises under Title 35 Patents. Plaintiff also seeks remedies available pursuant to 18 U.S.C. § 1836(b)(3) because this action also arises under Defend Trade Secrets Act.

4. This Court also has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. 1367.

5. This Court has personal jurisdiction over Defendants under O.C.G.A. § 9-10-91(1) because they transact business within this state.

6. This Court has personal jurisdiction over Defendants under O.C.G.A. § 9-10-91(2) because they committed tortious acts within the State of Georgia causing Plaintiff injury in this state and elsewhere.

7. Defendants have sufficient contacts with the State of Georgia to satisfy Due Process. *See Durham v. LG Chem, Ltd.*, 2022 U.S. App. LEXIS 2804 at *6-7 (Jan. 31, 2022). *See also Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

8. Venue is proper in this district under 28 U.S.C. § 1391(b) because Defendants reside and conduct business in this district, and because this judicial district is where a "…substantial part of the events or omissions giving rise to the claim occurred…."

## PARTIES

### Plaintiff

9. Plaintiff Gumersindo Martinez is an individual, residing at 1261 Red Maple Street Centerton, Arkansas 72719.

### Defendants

10. Defendant ServeCo North America, LLC, is a limited liability company organized under Georgia law with its principal place of business at 19 Smiley Ingram Rd., Cartersville, Georgia, 30121 (Bartow County, Georgia) and a registered agent office of 326 Roswell Street, Emerson Overlook, Suite 100 Marietta, Georgia 30060 (Cobb County, Georgia).

11. Defendant Tony Milano is a natural person who, upon information and belief, resides at 11 Hawks Farm Road, White, Georgia 30184 (Bartow County, Georgia) and may be served with process therein or wherever he may be found. Upon information and belief, Milano operates and directs ServeCo North America, LLC, as its Chief Executive Officer.

12. Defendant Toni Milano is a natural person who, upon information and belief, resides at 11 Hawks Farm Road, White, Georgia 30184 (Bartow County, Georgia) and may be served with process therein or wherever he may be found. Upon information and belief, Milano operates and directs ServeCo North America, LLC as its President.

13. Defendant Chris Schall is a natural person who, upon information and belief, resides at 4458 Maple Drive NW, Acworth, Georgia 30101 (Cobb County, Georgia) and may be served with process therein or wherever he may be found. Upon information and belief, Schall operates and directs ServeCo North America, LLC, as its Chief Revenue Officer.

14. Defendant Michele Zanin is a natural person who, upon information and belief, resides at 3520 S. Ocean Boulevard, Apt. A201, South Palm Beach, Florida 33480 and may be served with process therein or wherever he may be found. Upon information and belief, Zanin operates and directs ServeCo North America, LLC, as its Chief Technology Officer and has sufficient connections with the State of Georgia to apprise the state and federal courts located in Georgia jurisdiction over him.

15. The attached Exhibits identify Tony Milano as the Chief Executive Officer of ServeCo North America. Accordingly, Tony Milano is responsible for the day-to-day functions and actions of ServeCo North America. *See*, Ex. A.

16. The attached Exhibits identify Toni Milano as the President of ServeCo North America. Accordingly, Toni Milano is responsible for overseeing the actions of ServeCo North America, LLC and is responsible for such actions. *See*, Exhibit B.

17. Chris Schall has attended and promoted the infringing product at trade shows in Las Vegas, Nevada as such is liable for patent infringement. *See, Aff.* of George Martinez. *See also,* Exhibit C and Exhibit D.

18. Upon information and belief, Michele Zanin leads ServeCo North America, LLC's Adaptive Core Technology (ACT) and has misappropriated trade secrets provided to ServeCo North America from Plaintiff by incorporating trade secrets into the infringing product's hardware and software. *See, Aff.* of George Martinez.

19. Plaintiff asserts claims against Tony Milano, Toni Milano, Chris Schall, and Michele Zanin, in their capacity as corporate officers of ServeCo North America LLC.

## **FACTUAL BACKGROUND COMMON TO ALL COUNTS**

20. Plaintiff is an entrepreneur based in Arkansas who provides furniture repair services.

21. Plaintiff developed the system and methods for detecting mattress defects under the Patent No. US 12,618,781 B2 ("Patent"), which utilizes laser technology to analyze mattresses for potential defects. Ex. C.

22. The mattress defect detection system consists of the following: (1) the mattress defect detection device, (2) the computing device, (3) the data storage device, and (4) the communication software between the mattress defect detection device, computing device, and data storage device. *Id.*

23. Plaintiff's mattresses defect detection system enables technicians to identify depressions within the mattress, provides data on those depressions, stores the data and all these functions are integrated into one singular system. *Id.*

24. The Patent is valid, and its rights are enforceable by the Patent owner. *Id.*

25. The registration constitutes prima facie evidence of the validity of the Patent and of Plaintiff's ownership of the Patent, and of Plaintiff's exclusive right to use the Patent, and prevent others from using the Patent. 35 U.S.C. § 282.

26. Plaintiff has taken significant time and made substantial investments in promoting the services provided by the Patent, including nationwide advertisement and promotion.

## DEFENDANTS' INFRINGING CONDUCT

27. Defendants have begun the development of a product that is identical to the Patent and have begun promoting this similar product to clients and customers in the marketplace. Ex. D.

28. Defendants' conduct is likely to cause and has caused actual harm to Plaintiff.

29. Plaintiff is in the process of creating a new business venture to provide mattress repair services in the marketplace utilizing his exclusive technology.

30. Defendants' development of an identical product not only infringes on the exclusivity rights granted to a patent holder, but Defendants have already begun promoting this infringing product in the marketplace thus harming Plaintiff's future business plans.

31. Defendants have not provided any type of licensing fees in exchange for the promotion and advertising of the infringing product.

32. Defendants are blatantly profiting from Plaintiff's invention, a prototype of which having been provided to Defendants during his employment with them.

33. The Patented Product was created and developed prior to Plaintiff's employment with Defendant ServeCo North America, LLC.

34. Plaintiff applied for the patent for Patented Product prior to Plaintiff's employment with Defendant ServeCo North America, LLC, demonstrating its pre-existence as it relates to that employment.

35. Plaintiff sent a cease-and-desist letter dated August 21, 2026, and Defendants have continued to develop and promote their product regardless. Ex. E.

36. Defendants' actions are deliberate, willful, and taken in bad faith to profit from Plaintiff's invention.

## CLAIMS FOR RELIEF
## COUNT I – PATENT INFRINGEMENT (35 U.S.C. § 271)

37. Plaintiff incorporates by reference paragraphs 1-36 as if fully incorporated herein.

38. Plaintiff is the current exclusive owner and assignee of all right, titled, and interest in and to U.S. Patent No. US 12,618,781 B2 ("Patent") titled "System and Methods for Detecting Mattress Defects," duly and legally issued by the United States Patent and Trademark Office on May 2, 2025, including the right to bring this suit for damages and injunctive relief. A true and correct copy of the Patent is attached hereto as Exhibit C.

39. The Patent is valid and enforceable. Ex. C.

40. Defendants have directly infringed the Patent by making, using, marketing, selling, offering for sale, and importing into the United States, without authority, products that infringe on one or more technologies protected by the Patent, including a mattress defect detection system and components thereof, which perform services such as utilizing the software and hardware operating in the mattress defect detection system ("Infringing Product"). *See*, Ex. D.

41. Defendants' actions constitution the unauthorized make, use, offer to sell, or sale of a patented invention in contravention of 35 U.S.C. § 271.

42. Defendants have infringed claim 1 of the Patent.

43. Claim 1 of the Patent claims the following:

A mattress defect detection device comprising:

An elongate guide rail sized and configured for being oriented laterally or longitudinally relative to the mattress, in a substantially horizontal orientation and parallel with the top surface of the mattress;

A pair of support legs configured for engagement with the guide rail in order to elevate the guide rail a substantially uniform distance above the top surface of the mattress, thereby vertically spacing apart the guide rail and the top surface of the mattress;

Each of the support legs providing a support foot configured for being placed on a substantially horizontal surface; and

A control housing slidably engaged with the guide rail so as to be vertically spaced apart from the top surface of the mattress, and capable of selectively traversing a rail length of the guide rail between a first terminal end and an opposing second terminal end of the guide rail, the control housing providing:

an at least one measurement laser positioned and configured for measuring a depression depth of the at least one depression in the top surface of the mattress – namely, a distance between the at least one measurement laser and the top surface of the mattress – at an at least one measurement site, the at least one measurement laser oriented so as to emit a laser beam toward the top surface of the mattress in a direction that is perpendicular to the top surface of the mattress; and

An at least one microcontroller in electrical communication with the at least one measurement laser and receiving from the at least one measurement laser the depression depth associated with each of the at least one measurement site; and

A user application residing in memory on an at least one computing device, the at least one computing device in selective communication with the at least one mattress defect detection device and configured for receiving and processing the depression depth associated with each of the at least one

measurement site, obtained by the at least one mattress defect detection device;

Whereby, during use of the system, with the guide rail position over the top surface of the mattress, the control housing is moved along the guide rail between the first and second terminal ends, while the at least one measurement laser measures the depression depth of the at least one depression in the top surface of the mattress at each of the at least one measurement site, with each said depression depth measurement being subsequently transmitted to the at least one computing device, where the user application determines whether one or more of the at least one depression has a depression depth that exceeds a pre-defined threshold, in which case the user application determines that the mattress is defective; and

Whereby, during use of the system, the guide rail is positioned proximal to a first terminal edge of the mattress and incrementally moved toward an opposing second edge of the mattress, with the control housing slidably moved along the guide rail from the first terminal end to the opposing second

terminal end each time the guide rail is incrementally moved closer to the second terminal edge of the mattress.

*See*, Ex. C, p. 20.

44. On information and belief Defendants have infringed Claim 1 of the Patent through its development and manufacturing of the Infringing Product, which utilizes "An elongate guide rail sized and configured for being oriented laterally or longitudinally relative to the mattress, in a substantially horizontal orientation and parallel with the top surface of the mattress." Ex. D; ServeCo North America, ACT Vision ® Sales Team Overview with Tony Milano 13:00 (Vimeo, 8/21/26) (https://vimeo.com/1220297127) (Exhibit F).

45. On information and belief Defendants have infringed Claim 1 of the Patent through its development and manufacturing of the Infringing Product, which utilizes "A pair of support legs configured for engagement with the guide rail in order to elevate the guide rail a substantially uniform distance above the top surface of the mattress, thereby vertically spacing apart the guide rail and the top surface of the mattress." Ex. D.

46. On information and belief Defendants have infringed Claim 1 of the Patent through its development and manufacturing of the Infringing Product, which utilizes "A control housing slidably engaged with the guide rail so as to be vertically spaced apart from the top surface of the mattress, and capable of

selectively traversing a rail length of the guide rail between a first terminal end and an opposing second terminal end of the guide rail." Ex. F.

47. On information and belief Defendants have infringed Claim 1 of the Patent through its development and manufacturing of the Infringing Product, which utilizes "A user application residing in memory on an at least one computing device, the at least one computing device in selective communication with the at least one mattress defect detection device and configured for receiving and processing the depression depth associated with each of the at least one measurement site, obtained by the at least one mattress defect detection device." Ex. F.

48. On information and belief Defendants have infringed Claim 1 of the Patent through its development and manufacturing of the Infringing Product, which utilizes "…during use of the system, with the guide rail position over the top surface of the mattress, the control housing is moved along the guide rail between the first and second terminal ends, while the at least one measurement laser measures the depression depth of the at least one depression in the top surface of the mattress at each of the at least one measurement site, with each said depression depth measurement being subsequently transmitted to the at least one computing device, where the user application determines whether one or more of the at least one depression has a depression depth that exceeds a pre-defined

threshold, in which case the user application determines that the mattress is defective." Ex. F.

49. On information and belief Defendants have infringed Claim 1 of the Patent through its development and manufacturing of the Infringing Product, which utilizes "Whereby, during use of the system, the guide rail is positioned proximal to a first terminal edge of the mattress and incrementally moved toward an opposing second edge of the mattress, with the control housing slidably moved along the guide rail from the first terminal end to the opposing second terminal end each time the guide rail is incrementally moved closer to the second terminal edge of the mattress." ServeCo North America, ACT Vision ® Precision Mattress Technology (Vimeo, 5/19/26) (https://vimeo.com/1193655175?autoplay=1&muted=1&stream_id=Y2xpcHN8MjU1Nzk3ODMwfGlkOmRlc2N8W10%3D) (Exhibit G).

50. Claim 2 of the Patent claims the following:

"The mattress defect detection system of claim 1, wherein the guide rail is selectively lengthwise adjustable, thereby allowing the rail length of the guide rail to be selectively sized in order accommodate a width or a length of the mattress." Exhibit C, p. 20.

51. On information and belief Defendants have infringed Claim 2 of the Patent through its development and manufacturing of the Infringing Product, which

utilizes a "…guide rail is selectively lengthwise adjustable, thereby allowing the rail length of the guide rail to be selectively sized in order accommodate a width or a length of the mattress." Ex. F.

52. Claim 3 of the Patent claims the following:

"The mattress defect detection system of claim 2, wherein the guide rail is selectively modular and comprises an elongate primary rail and an at least one elongate rail extension configured for removable engagement with a terminal end of the primary rail so as to selectively increase the rail length." Exhibit C, p. 20.

53. On information and belief Defendants have infringed Claim 3 of the Patent through its development and manufacturing of the Infringing Product, which utilizes a "…guide rail is selectively modular and comprises an elongate primary rail and an at least one elongate rail extension configured for removable engagement with a terminal end of the primary rail so as to selectively increase the rail length." Ex. G.

54. Claim 4 of the Patent claims the following:

"The mattress defect detection system of claim 1, wherein the support legs are engaged with the first and second terminal ends of the guide rail." Exhibit C, p. 20.

55. On information and belief Defendants have infringed Claim 4 of the Patent through its development and manufacturing of the Infringing Product, which utilizes "…support legs [that] are engaged with the first and second terminal ends of the guide rail." Ex. G.

56. Claim 5 of the Patent claims the following:

"The mattress defect detection system of claim 1, wherein the control housing provides a guide slot through which the guide rail extends, thereby allowing the control housing to slidably traverse the guide rail." Exhibit C, p. 20.

57. On information and belief Defendants have infringed Claim 5 of the Patent through its development and manufacturing of the Infringing Product, which utilizes a "…control housing [which] provides a guide slot through which the guide rail extends, thereby allowing the control housing to slidably traverse the guide rail." Ex. F; Ex. G.

58. Claim 6 of the Patent claims the following:

"The mattress defect detection system of claim 1, wherein the control housing further provides a guide wand pivotally engaged with the control housing and configured for assisting with manually moving the control housing relative to the guide rail." Exhibit C, p. 21.

59. On information and belief Defendants have infringed Claim 6 of the Patent through its development and manufacturing of the Infringing Product, which

utilizes a "…control housing further provides a guide wand pivotally engaged with the control housing and configured for assisting with manually moving the control housing relative to the guide rail." Ex. F; Ex. G.

60. Claim 7 of the Patent claims the following:

"The mattress defect detection system of claim 1, wherein the at least one measurement laser is a Class 2 CMOS laser." Exhibit C, p. 21.

61. On information and belief Defendants have infringed Claim 7 of the Patent through its development and manufacturing of the Infringing Product, which utilizes a "…measurement laser [that] is a Class 2 CMOS laser." Ex. G.

62. Claim 8 of the Patent claims the following:

"The mattress defect detection system of claim 1, wherein the control housing further provides a control 10 display configured for displaying select data related to the mattress." Exhibit C, p. 21.

63. On information and belief Defendants have infringed Claim 8 of the Patent through its development and manufacturing of the Infringing Product, which utilizes a "control housing [that] further provides a control 10 display configured for displaying select data related to the mattress." Ex. F.

64. Claim 9 of the Patent claims the following:

"The mattress defect detection system of claim 1, wherein the control housing further provides an at least one imaging device in electrical communication with

the at least one microcontroller, the at least one imaging device positioned and configured for capturing at least one of a site photo and a site video of the at least one measurement site in tandem with the at least one measurement laser measuring the at least one depression of said at least one measurement site." Exhibit C, p. 21.

65. On information and belief Defendants have infringed Claim 9 of the Patent through its development and manufacturing of the Infringing Product, which utilizes "…one imaging device in electrical communication with the at least one microcontroller, the at least one imaging device positioned and configured for capturing at least one of a site photo and a site video of the at least one measurement site in tandem with the at least one measurement laser measuring the at least one depression of said at least one measurement site." Ex. F; Ex. G.

66. Claim 10 of the Patent claims the following:

"The mattress defect detection system of claim 1, wherein the control housing further provides a transceiver in electrical communication with the microcontroller and in remote communication with the computing device, thereby allowing the microcontroller to transmit to the computing device select data related to the mattress." Exhibit C, p. 21.

67. On information and belief Defendants have infringed Claim 10 of the Patent through its development and manufacturing of the Infringing Product, which

utilizes a "…control housing [that] further provides a transceiver in electrical communication with the microcontroller and in remote communication with the computing device, thereby allowing the microcontroller to transmit to the computing device select data related to the mattress." Ex. F; Ex. G.

68. Claim 11 of the Patent claims the following:

"A mattress defect detection system for analyzing a mattress for potential defects in the nature of an at least one depression in a top surface of the mattress, namely, a sunken area in the top surface of the mattress at a location where no physical object is actively present nor positioned directly in contact with the top surface of the mattress, the system comprising:

> an elongate guide rail sized and configured for being oriented laterally or longitudinally relative to the mattress, in a substantially horizontal orientation and parallel with the top surface of the mattress;
>
> a pair of support legs configured for engagement with the guide rail in order to elevate the guide rail a substantially uniform distance above the top surface of the mattress, thereby vertically spacing apart the guide rail and the top surface of the mattress;
>
> each of the support legs providing a support foot configured for being placed on a substantially horizontal surface; and

a control housing slidably engaged with the guide rail, so as to be vertically spaced apart from the top surface of the mattress, and capable of selectively traversing a rail length of the guide rail between a first terminal end and an opposing second terminal end of the guide rail, the control housing providing:

an at least one measurement laser positioned and configured for measuring a depression depth of the at least one depression in the top surface of the mattress- namely, a distance between the at least one measurement laser and the top surface of the mattress- at an at least one measurement site, the at least one measurement laser oriented so as to emit a laser beam toward the top surface of the mattress in a direction that is perpendicular to the top surface of the mattress; and

an at least one microcontroller in electrical communication with the at least one measurement laser for controlling the at least one measurement laser and receiving from the at least one measurement laser the depression depth associated with each of the at least one measurement site;

whereby, during use of the system, with the guide rail positioned over the top surface of the mattress, the control housing is moved

along the guide rail between the first and second terminal ends, while the at least one measurement laser measures the depression depth of the at least one depression in the top surface of the mattress at each of the at least one measurement site; and whereby, during use of the system, the guide rail is positioned proximal to a first terminal edge of the mattress and incrementally moved toward an opposing second terminal edge of the mattress, with the control housing slidably moved along the guide rail from the first terminal end to the opposing second terminal end each time the guide rail is incrementally moved closer to the second terminal edge of the mattress." Exhibit B, p. 21.

69. On information and belief Defendants have infringed Claim 11 of the Patent through its development and manufacturing of the Infringing Product, which utilizes "A mattress defect detection system for analyzing a mattress for potential defects in the nature of an at least one depression in a top surface of the mattress, namely, a sunken area in the top surface of the mattress at a location where no physical object is actively present nor positioned directly in contact with the top surface of the mattress, the system comprising:

an elongate guide rail sized and configured for being oriented laterally or longitudinally relative to the mattress, in a substantially horizontal orientation and parallel with the top surface of the mattress;

a pair of support legs configured for engagement with the guide rail in order to elevate the guide rail a substantially uniform distance above the top surface of the mattress, thereby vertically spacing apart the guide rail and the top surface of the mattress;

each of the support legs providing a support foot configured for being placed on a substantially horizontal surface; and

a control housing slidably engaged with the guide rail, so as to be vertically spaced apart from the top surface of the mattress, and capable of selectively traversing a rail length of the guide rail between a first terminal end and an opposing second terminal end of the guide rail, the control housing providing:

an at least one measurement laser positioned and configured for measuring a depression depth of the at least one depression in the top surface of the mattress- namely, a distance between the at least one measurement laser and the top surface of the mattress- at an at least one measurement site, the at least one measurement laser oriented so as to emit a laser beam toward the top surface

of the mattress in a direction that is perpendicular to the top surface of the mattress; and

an at least one microcontroller in electrical communication with the at least one measurement laser for controlling the at least one measurement laser and receiving from the at least one measurement laser the depression depth associated with each of the at least one measurement site;

whereby, during use of the system, with the guide rail positioned over the top surface of the mattress, the control housing is moved along the guide rail between the first and second terminal ends, while the at least one measurement laser measures the depression depth of the at least one depression in the top surface of the mattress at each of the at least one measurement site; and

whereby, during use of the system, the guide rail is positioned proximal to a first terminal edge of the mattress and incrementally moved toward an opposing second terminal edge of the mattress, with the control housing slidably moved along the guide rail from the first terminal end to the opposing second terminal end each time the guide rail is incrementally moved closer to the second terminal edge of the mattress." Ex. F; Ex. G.

70. Claim 12 of the Patent claims the following:

"The mattress defect detection device of claim 11 wherein the guide rail is adjustable, thereby allowing the rail length of guide rail to be selectively sized in order accommodate a width or a length of the mattress." Exhibit C, p. 21.

71. On information and belief Defendants have infringed Claim 12 of the Patent through its development and manufacturing of the Infringing Product, which utilizes "The mattress defect detection device of claim 11 wherein the guide rail is adjustable, thereby allowing the rail length of guide rail to be selectively sized in order accommodate a width or a length of the mattress." Ex. F; Ex. G.

72. Claim 13 of the Patent claims the following:

"The mattress defect detection system of claim 11, wherein the guide rail is selectively modular and comprises an elongate primary rail and an at least one elongate rail extension configured for removable engagement with a terminal end of the primary rail so as to selectively increase the rail length." Exhibit C, p. 21.

73. On information and belief Defendants have infringed Claim 13 of the Patent through its development and manufacturing of the Infringing Product, which utilizes a "The mattress defect detection system of claim 11, wherein the guide rail is selectively modular and comprises an elongate primary rail and an at least one elongate rail extension configured for removable engagement with a

terminal end of the primary rail so as to selectively increase the rail length." Ex. F; Ex. G.

74. Claim 14 of the Patent claims the following:

"The mattress defect detection system of claim 11, wherein the support legs are engaged with the first and second terminal ends of the guide rail." Exhibit C, p. 21.

75. On information and belief Defendants have infringed Claim 14 of the Patent through its development and manufacturing of the Infringing Product, which utilizes a "The mattress defect detection system of claim 11, wherein the support legs are engaged with the first and second terminal ends of the guide rail." Ex. F; Ex. G.

76. Claim 15 of the Patent claims the following:

"The mattress defect detection system of claim 11, wherein the control housing provides a guide slot through which the guide rail extends, thereby allowing the control housing to slidably traverse the guide rail." Exhibit C, p. 21.

77. On information and belief Defendants have infringed Claim 15 of the Patent through its development and manufacturing of the Infringing Product, which utilizes a "The mattress defect detection system of claim 11, wherein the control housing provides a guide slot through which the guide rail extends, thereby allowing the control housing to slidably traverse the guide rail." Ex. F; Ex. G.

78. Claim 16 of the Patent claims the following:

"The mattress defect detection system of claim 11, wherein the control housing provides a guide want pivotally engaged with the control housing and configured for assisting with manually moving the control housing relative to the guide rail." Exhibit C, p. 21.

79. On information and belief Defendants have infringed Claim 16 of the Patent through its development and manufacturing of the Infringing Product, which utilizes a "The mattress defect detection system of claim 11, wherein the control housing provides a guide want pivotally engaged with the control housing and configured for assisting with manually moving the control housing relative to the guide rail." Ex. F; Ex. G.

80. Claim 17 of the Patent claims the following:

"The mattress defect detection system of claim 11, wherein the at least one measurement laser is a Class 2 CMOS laser." Exhibit C, p. 21.

81. On information and belief Defendants have infringed Claim 17 of the Patent through its development and manufacturing of the Infringing Product, which utilizes a "The mattress defect detection system of claim 11, wherein the at least one measurement laser is a Class 2 CMOS laser." Ex. F; Ex. G.

82. Claim 18 of the Patent claims the following:

"The mattress defect detection system of claim 11, wherein the control housing further provides a control display configured for displaying select data related to the mattress." Exhibit C, p. 21.

83. On information and belief Defendants have infringed Claim 18 of the Patent through its development and manufacturing of the Infringing Product, which utilizes a "The mattress defect detection system of claim 11, wherein the control housing further provides a control display configured for displaying select data related to the mattress." Ex. F; Ex. G.

84. Claim 19 of the Patent claims the following:

"The mattress defect detection system of claim 11, wherein the control housing further provides an at least one imaging device in electrical communication with the at least one microcontroller, the at least one imaging device positioned and configured for capturing at least one of a site photo and a site video of the at least one measurement site in tandem with the at least one measurement laser measuring the at least one depression of said at least one measurement site." Exhibit C, p. 21.

85. On information and belief Defendants have infringed Claim 19 of the Patent through its development and manufacturing of the Infringing Product, which utilizes a "The mattress defect detection system of claim 11, wherein the control housing further provides an at least one imaging device in electrical

communication with the at least one microcontroller, the at least one imaging device positioned and configured for capturing at least one of a site photo and a site video of the at least one measurement site in tandem with the at least one measurement laser measuring the at least one depression of said at least one measurement site." Ex. F; Ex. G.

86. Claim 20 of the Patent claims the following:

"A method for analyzing a mattress for potential defects in the nature of an at least one depression in a top surface of the mattress, namely, a sunken area in the top surface of the mattress at a location where no physical object is actively present nor positioned directly in contract with the top surface of the mattress, using the mattress defect detection system of claim 1, the method comprising the steps of:

(a) Positioning the guide rail a substantially uniform distance over the top surface of the mattress, such that the guide rail is oriented laterally or longitudinally relative to the mattress, in a substantially horizontal orientation and parallel with a top surface of the mattress;

(b) Further positioning the guide rail proximal to a first terminal edge of the mattress;

(c) Slidably positioning the control housing on the guide rail substantially at the first terminal end of the guide rail

(d) Obtaining, via the at least one measurement laser, a depression depth of the at least one depression of the current measurement site;

(e) Transmitting the depression depth of the at least one depression of the current measurement site to the at least one computing device;

(f) Determining, via the user application, whether the depression depth of the at least one depression of the current measurement site exceeds a predefined threshold;

(g) Upon the user application determining that the depression depth of the at least one depression of the current measurement site exceeds a pre-defined threshold, the user application determining that the mattress is defective;

(h) Slidably moving the control housing along the guide rail toward the opposing second terminal end of the guide rail until a further measurement site is reached;

(i) Repeating steps (d)-(h) until the control housing reaches the opposing second terminal edge of the mattress; and

(j) Repeating steps (c)-(j) until the guide rail reaches the opposing second terminal edge of the mattress." Exhibit C, p. 21–22.

87. On information and belief Defendants have infringed Claim 20 of the Patent through its development and manufacturing of the Infringing Product, which utilizes a "A method for analyzing a mattress for potential defects in the nature

of an at least one depression in a top surface of the mattress, namely, a sunken area in the top surface of the mattress at a location where no physical object is actively present nor positioned directly in contract with the top surface of the mattress, using the mattress defect detection system of claim 1, the method comprising the steps of:

(k) Positioning the guide rail a substantially uniform distance over the top surface of the mattress, such that the guide rail is oriented laterally or longitudinally relative to the mattress, in a substantially horizontal orientation and parallel with a top surface of the mattress;

(l) Further positioning the guide rail proximal to a first terminal edge of the mattress;

(m) Slidably positioning the control housing on the guide rail substantially at the first terminal end of the guide rail

(n) Obtaining, via the at least one measurement laser, a depression depth of the at least one depression of the current measurement site;

(o) Transmitting the depression depth of the at least one depression of the current measurement site to the at least one computing device;

(p) Determining, via the user application, whether the depression depth of the at least one depression of the current measurement site exceeds a predefined threshold;

(q) Upon the user application determining that the depression depth of the at least one depression of the current measurement site exceeds a pre-defined threshold, the user application determining that the mattress is defective;

(r) Slidably moving the control housing along the guide rail toward the opposing second terminal end of the guide rail until a further measurement site is reached;

(s) Repeating steps (d)-(h) until the control housing reaches the opposing second terminal edge of the mattress; and

(t) Repeating steps (c)-(j) until the guide rail reaches the opposing second terminal edge of the mattress." Ex. F; Ex. G.

88. The Infringing Product is a mattress defect detection system that utilizes lasers, guide rails, control housing, and support feet. Ex. F; Ex. G.

89. The Infringing Product infringes on the design of the Patent by violation of Claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, and 20 of the Patent. Ex. F; Ex. G.

90. Defendants had actual knowledge of Plaintiff's rights in the Patent because Plaintiff's counsel sent Defendants a cease-and-desist letter demanding they stop the infringing use before the filing date of this Complaint. Ex. E.

91. Defendants are not and have never been licensed or otherwise authorized by Plaintiff, whether implicitly or explicitly, to develop or manufacture any of the claims of the Patent. *See, Aff.* of George Martinez.

92. Defendants infringing activities, has caused Plaintiff to suffer substantial damages in an amount to be proven at trial.

93. As a result of Defendants' infringement Plaintiff has been damaged in an amount equal to the loss of profits that would otherwise have accrued by Plaintiff, but in no event less than a reasonable royalty.

94. Defendants continuing acts of infringement are confusing consumers as to the ownership of the Patent, gaining market share through the use of the Infringing Product in violation of Plaintiff's Patent rights, attempting to license the Patent even though they do not have rights in the Patent, and attempting to sell the Infringing Procut and make profits off of Plaintiff's invention. Defendants continuing acts of infringement are therefore irreparably harming and causing damage to Plaintiff, for which Plaintiff has no adequate remedy at law, and will continue to suffer such irreparable injury unless Defendants' continuing acts of infringement are enjoined by the Court. The hardships that an injunction would impose are less than those faced by Plaintiff should an injunction not issue. The public interest would be served by issuance of an injunction.

95. Defendants' infringement of the Patent has been and continues to be willful and deliberate, justifying a trebling of damages under 35 U.S.C. § 271.

## COUNT II – VIOLATION OF DEFEND TRADE SECRETS ACT

96. Plaintiff incorporates by reference paragraphs 1 through 95 as though fully set forth herein.

97. Plaintiff is the owner of trade secrets as that term is defined 18 U.S.C. § 1839. *See,* 18 U.S.C. § 1839.

98. 18 U.S.C. § 1839 defines a "Trade secret" as,

> All forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if: (1) the owner therefore has taken reasonable measures to keep such information secret; and (2) the information derives independent economic value, actual or potential, form not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C. § 1839(3).

99. Plaintiff designed the prototype of the Patent that Defendants are currently using as "ACT Vision" to solicit sales and market to consumers.

100. Plaintiff has not begun offering the prototype to the market and has kept the software code enabling communication with the user-interface program secret.

101. The prototype was disclosed to the Defendants under an obligation of confidentiality. *See,* Ex. H. Administrative Services Agreement, Exhibit H.

102. Plaintiff also has specialized knowledge and skill regarding the transfer of the data received by the Patent and the transferring of same into a user-interface program.

103. Plaintiff has taken reasonable measures to keep this knowledge and skills secret and that secrecy derives independent economic value. If the market learns of this specialized knowledge and skill, then Plaintiff would be harmed as they would lose a competitive edge in the marketplace.

104. The trade secrets are related to the Patent used in, or intended for use in, interstate or foreign commerce. Plaintiff has plans to market the Patent along with the specialized skill and knowledge of the Patent's software nationwide as a subscription-based service.

105. Defendant misappropriated Plaintiff's "trade secrets," as that term is defined in 18 U.S.C. § 1839(5), as they have misappropriated the trade secrets by improper means for use in, or the intended use in, interstate or foreign commerce. *See* 18 U.S.C. § 1836.

106. Defendants have begun using the trade secrets in violation of the Administrative Services Agreement to develop and manufacture the Infringing

Product as well as develop the software that enables the transfer of data to a user interface from Plaintiff's invention.

107. Defendants willful and malicious misappropriation entitles Plaintiff to actual damages caused by the misappropriation, and unjust enrichment caused by the misappropriation of the trade secrets or in lieu of actual damages and unjust enrichment, the damages caused by the misappropriation measured by the imposition of liability for a reasonable royalty for the unauthorized use of the trade secret.

108. Plaintiff also is entitled to exemplary damages in an amount of not more than two (2) times the amount of damages awarded because of the willful and malicious misappropriation by Defendants.

**COUNT III – VIOLATIONS OF THE GEORGIA DECEPTIVE TRADE PRACTICES ACT O.C.G.A. § 10-1-370 *et seq.***

109. Plaintiff reincorporates by reference paragraphs 1-108 as if set forth herein.

110. Under the Georgia's Uniform Deceptive Trade Practices Act ("GUDTPA"), it is a deceptive trade practice if a person, among other things, in the course of that person's business, vocation, or occupation, passes off goods or services as those of another, causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services, or engages in any other conduct that similarly creates a likelihood of confusion or misunderstanding.

111. Upon information and belief, Defendants have informed individuals and businesses within the mattress industry that they are the owners of the Patent, which is an untrue statement that constitutes a deceptive trade practice leading to confusion or misunderstanding in the marketplace. Ex. F.

112. Defendants have also instructed their sales team to inform clients and customers that they are the owners of the Patent. *See Aff.* of George Martinez; Ex. F.

113. These actions have caused, are causing, and will continue to cause a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of the goods and services Defendants are causing a likelihood of confusion as to Defendants' affiliation, connection, or association with Plaintiff, and are otherwise damaging the public through this misrepresentation. Defendants' conduct constitutes unfair and deceptive acts or practices in the course of business, trade, or commerce in violation of O.C.G.A. §§ 10-1-370 to 10-1-375.

114. Defendants' actions have caused, and will continue to cause, irreparable harm to Plaintiff as a result of such activities, and Plaintiff has suffered substantial damages. Plaintiff is likely to continue to be damaged by Defendants' deceptive trade practices as described herein.

115. Plaintiff is therefore entitled to injunctive relief pursuant to O.C.G.A. § 10-1-373(a). In addition, the Court should award costs pursuant to O.C.G.A. § 10-1-373(b) and should exercise its discretion to award attorneys' fees to Plaintiff pursuant to O.C.G.A. § 10-1-373(b)(2) on the grounds that Defendants' have willfully engaged in the deceptive trade practice described herein knowing it to be deceptive.

## NOTICE OF REQUIREMENT OF LITIGATION HOLD

116. Defendants are hereby notified that they are legally obligated to locate, preserve, and maintain all records, notes, drawings, documents, data, communications, materials, electronic recordings, audio/video/photographic recordings, and digital files, including edited and unedited or "raw" source material, and other information and tangible things that Defendants know, or reasonably should know, may be relevant to the actual or potential claims, counterclaims, defense, and damages by any party or potential party in this lawsuit, whether created or residing in hard copy form or in form of electronically stored information ("Potential Evidence"). As used herein, the phrase "electronically stored information" includes, without limitation: computer files (and file fragments), e-mail (both sent and received, whether internally or externally), information concerning e-mail ( including, logs of e-mail history and usage, header information, and deleted but recoverable e-

mails), text files (including drafts, revisions, and active or deleted word processing documents), instant messages, audio recordings and files, video footage and files, audio files, photographic footage and files, spreadsheets, databases, calendars, telephone logs, contact manager information, internet usage files, and all other information created, received, or maintained on any and all electronic and/or digital forms, sources and media, including, any and all hard dicks, removable media, peripheral computer or electronic storage devices, laptop computers, mobile phones, personal data assistant devices, video cameras and still cameras, cloud storage, and any and all other locations where electronic data is stored. These sources may also include any personal electronic, digital, and storage devices of Defendants' agents, resellers, or employees, if Defendants' electronically stored information resides there.

117. Defendants are hereby further notified and forewarned that any alteration, destruction, negligent loss, or unavailability, by act or omission, of any Potential Evidence, including the destruction or concealment of the infringing without the Court's express permission, may result in damages or a legal presumption by the Court and jury that the Potential Evidence is not favorable to Defendants' claims and defenses. To avoid such a result, Defendants' preservation duties include the requirement that Defendants immediately notify their agents and employees to halt and supervise the auto-

delete functions of Defendants' electronic systems and refrain from deleting Potential Evidence, either manually or through a policy of periodic deletion.

## RESERVATION OF RIGHTS

118. Plaintiff's investigation is ongoing, and Plaintiff reserves the right to amend this Complaint to assert claims against additional individuals employed by or connected to Defendants related to the Defendants' patent infringement, violation of the Defend Trade Secrets Act, and violations of the Georgia Deceptive Trade Practices Act. Plaintiff further reserves the right to amend this Complaint to assert additional or supplementary claims against Defendants, including under additional legal theories.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants and grant relief as follows:

i. Judgement that Defendants have committed patent infringement;

ii. Judgment that Defendants are liable for violations of the Deceptive Trade Practices Act under Georgia law;

iii. An accounting;

iv. All actual damages suffered by Plaintiff including lost sales and profits, and any other damages permitted under federal law;

v. Disgorgement of all Defendants' profits related to the infringement;

vi. Granting damages equal to at least a reasonable royalty to Plaintiff for time Defendants infringed;

vii. Permanently enjoin Defendants from using any product that violates the exclusive rights held by Plaintiff;

viii. Award Plaintiff his attorneys' fees and costs; and grant any such further relief the Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury on all issues so triable.

This 12th day of October, 2026.

**SUTTON LAW GROUP, LLC**

Darrell L. Sutton
Ga. Bar No.: 693484
Samuel M. Lyon
Ga. Bar No.: 921804
Andrew E. Valbuena
Ga. Bar No.: 579175
*Attorneys for Plaintiff*

351 Washington Avenue, Suite 300
Marietta, Georgia 30060
Phone: (678) 529-6180
Facsimile: (678) 529-6199
dls@sutton-law-group.com
sml@sutton-law-group.com
aev@sutton-law-group.com

**CERTIFICATION:** The above-signed counsel hereby certifies that this document was prepared in Times New Roman 14-point font and a 1-inch top margin in accordance with LR 5.1B, N.D. Ga.