# EXHIBIT H

# ADMINISTRATIVE SERVICES AGREEMENT

**THIS ADMINISTRATIVE SERVICES AGREEMENT** (this "Agreement") is made and effective as of the 1st Day of January 2025, by and between ServeCo North America, LLC, a Georgia limited liability company ("Service Provider"), and Premier Furniture Consultant, LLC dba ServeCo Repair, an Arkansas limited liability company (the "Company").

**WHEREAS**, Service Provider has developed experience and knowledge in business and financial services, which experience and knowledge are of great value to the Company in implementing their respective businesses. Service Provider is willing to provide financial and administrative services to the Company. Accordingly, the compensation arrangements set forth in this Agreement are designed to compensate Service Provider for such services.

**NOW, THEREFORE,** for and in consideration of the covenants and conditions hereinafter set forth, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, intending to be legally bound hereby, the parties hereto mutually agree as follows:

**Section 1. Administrative Services**. Service Provider shall, in its reasonable, good faith judgment provide general administrative, financial, accounting, and other corporate services to the Company including: (A) execution of financial accounting requirements and records; (B) marketing and sales activity; (C) administering human resources; and (D) information technology (IT) services. These Administrative Services shall be performed by the officers, employees, agents, affiliates or assigns of Service Provider as it may determine in its discretion from time to time.

**Section 2. Time Commitment**. Service Provider shall devote sufficient time to enable Service Provider to provide the services contemplated in this Agreement; *provided, however,* the Company acknowledges and agrees that the amount of time provided by Service Provider hereunder will vary depending on the nature and status of the Company's and its subsidiaries' activities in any given month.

**Section 3. Consideration**.

Management Fee. Company shall reimburse Service Provider for the Administrative Services as follows:

(a) Service Provider shall be paid within 30 days following the end of each calendar Year five (5)% of invoiced revenue collected for a calendar Year if the invoiced revenue collected was less than $2,500,000 plus all human resource expense directly related to the Company's operations, or two and one-half (2.5)% if the invoiced revenue collected for a calendar year was more than $2,500,000 but less than $5,000,000 in a calendar year plus all human resource expense directly related to the Company's operations, and zero (0)% if the invoiced revenue

collected was more than $5,000,000 in a calendar year plus all human resource expense direcly related to the Company's operations.

**Section 4.** Provider of Services. Service Provider agrees that the services to be provided hereunder shall be performed by the officers, employees, agents, affiliates or assigns of Service Provider as it may determine in its discretion from time to time.

**Section 5.** Independent Contractor Status. In the performance of Service Provider's obligations hereunder, it is understood that Service Provider shall be at all times acting and performing independently of the Company's control as to the manner and methods of providing the services required under this Agreement. Service Provider's compliance with the rules and regulations of the Company governing the conduct of Service Provider, generally, shall be limited to those rules and regulations to which Service Provider has previously agreed in writing. In the performance of Service Provider's obligations hereunder, neither Service Provider nor any of its members, officers, directors, employees, agents or representatives shall be considered an employee, agent, officer, or associate of the Company for any purpose. It is understood that Service Provider is free to contract for similar services with other persons or companies while under contract with the Company. Service Provider shall not, in connection with any services provided for, to, or on behalf of the Company, represent to any person or entity that Service Provider is associated with the Company or its subsidiaries in any capacity other than that of an independent contractor. This Agreement in no way limits the ability of Service Provider, or any of its affiliates, to engage in any other activities other than activities related to a direct competitor of the Company.

**Section 6.** Indemnification. The Company agrees to indemnify, defend and hold harmless Service Provider and its members, officers, managers, directors, affiliates, employees and agents against and from any and all loss, liability, suits, claims, costs, damages and expenses (including attorneys' fees of third parties) arising from this Agreement and/or Service Provider's performance hereunder, except as a result of their negligence or intentional wrongdoing, and except for diminution in value of any investment in the Company.

**Section 7.** Entire Agreement. This Agreement constitutes the entire understanding between the parties relating to the provision of services contemplated herein and there are no covenants, conditions, representations, or agreements, oral or written, of any nature whatsoever, other than those contained herein, relating to the provision of services contemplated herein.

**Section 8.** Amendments. No amendment, alteration, or modification of this Agreement shall be binding upon the parties hereto unless said amendment, alteration, or modification is in writing and signed by both parties hereto.

**Section 9.** **Severability**. In the event any provision of this Agreement shall be found to be void, the remaining provisions of this Agreement shall nevertheless be binding with the same effect as though the void part were deleted. If, moreover, any one or more of the provisions contained in this Agreement shall, for any reason, be held to be excessively broad as to time, duration, geographical scope, activity or subject, it shall be construed by limiting and reducing it so as to be enforceable to the fullest extent compatible with the applicable law as it shall then appear.

**Section 10.** **Waiver**. The waiver of a breach of any term of this Agreement by any of the parties hereto shall not operate or be construed as a waiver by such party of the breach of any other term of this Agreement or as a waiver of a subsequent breach of the same term of this Agreement.

**Section 11.** **Assignment**. Service Provider shall not assign, transfer, or convey this Agreement, or in any way encumber the compensation or other benefits payable to it hereunder, except with the prior written consent of the Company; *provided, however,* Service Provider may assign this Agreement to its affiliates without the prior written consent of the Company. The Company may assign this Agreement and its rights hereunder in whole, but not in part, to any entity with or into which it may transfer all or substantially all of its assets (and, in such event, the term "Company" as used herein shall mean and refer to such successor-in-interest).

**Section 12.** **Notices**. All notices required or permitted to be given under this Agreement shall be in writing and shall be delivered personally or sent by facsimile, overnight delivery, or registered mail, return receipt requested, to the parties at the addresses set forth on the signature page of this Agreement or at such other addresses as either party may designate to the other in writing. Notices delivered personally or by overnight delivery shall be effective upon delivery. Notices properly addressed and delivered by mail, return receipt requested, shall be effective five days from deposit with the United States Postal Service. Notices sent by facsimile shall be effective upon confirmation of transmission.

**Section 13.** **Term**. Subject to the provisions hereinafter set forth, the term of this Agreement shall commence as of the effective date of this Agreement and shall end three (3) years from such date (as extended by any Renewal Term, the "Term") and shall automatically renew annually for additional one (1) year terms (each individually a "Renew Term") unless either party to this Agreement shall give written notice otherwise at least ninety (90) days prior to the end of the Term or Renew Term. Notwithstanding anything in this Agreement to the contrary, this Agreement shall terminate on the date Service Provider and its affiliates no longer collectively own 50% or more of those equity securities of the Company.

**Section 14.** **Binding Effect**. This Agreement shall be binding on the parties hereto and on their respective heirs, administrators, executors, successors, and permitted assigns.

**Section 15.** Counterparts. This Agreement may be executed in two (2) or more counterparts and by facsimile or portable document format (.pdf), each of which shall constitute an original, but all of which together shall constitute but a single document.

**Section 16.** Governing Law; Jurisdiction. This Agreement shall be governed by and construed in accordance with the laws of the State of Georgia, without giving effect to the conflict of law's provisions. Each party consents to the jurisdiction of the state and federal courts located in the State of Georgia in connection with any claim or dispute arising under or in connection with this Agreement. Each party consents to service of process by U.S. mail.

**Section 17.** Confidential Information. Service Provider acknowledges that any use of the Company's Confidential Information (as hereinafter defined) by Service Provider other than for the sole benefit of the Company and/or its subsidiaries would be wrongful and cause irreparable harm to the Company. Accordingly, Service Provider shall not, at any time during or subsequent to its engagement by the Company, without the express written consent of the Company, publish, disclose or divulge to any person, firm or corporation, or use, directly or indirectly, for its own benefit or for the benefit of any person, firm or corporation, for use other than for the Company and its subsidiaries, any property, trade secrets or Confidential Information of the Company or its affiliates. "Confidential Information" means and includes all information known or used by the Company, its subsidiaries and their respective affiliates in their respective businesses which is not otherwise generally known in the industry (or if generally known, has not become so known due to Service Provider's breach of this Section 17), including, but not limited to, all data, reports, interpretations, forecasts, records, statements (written or oral) and documents of any kind relating to Company's costs and financial information, manufacturing, methods or processes, market studies, products, existing and potential customers, expansion plans, acquisition targets, pricing methods and strategies, new product plans and sources of supply. In addition, all other information disclosed to Service Provider or which Service Provider shall obtain during such employment with the Company which Service Provider has a reasonable basis to believe is confidential, or which Service Provider has a reasonable basis to believe the Company treats as confidential, shall be presumed to be Confidential Information.

**Section 18.** Dispute Resolution. Subject to the terms and conditions set forth below, in the event any dispute or controversy arises between the Service Provider and the Company relating to the terms and conditions of this Agreement, or the alleged breach thereof, each of the Service Provider and the Company agrees that prior to initiating any action in connection with such dispute or controversy they shall submit the dispute or controversy to non-binding mediation to be conducted in Georgia under the Commercial Mediation Rules of the American Arbitration Association. Notwithstanding the foregoing agreement to mediate any such dispute or controversy, (a) upon the passage of 30 days from the date such dispute or controversy is submitted to mediation, either party may commence litigation for the purpose of resolving the dispute or

controversy, and (b) the foregoing agreement shall not limit the ability of either party to obtain temporary or permanent injunctive relief at any time for the purpose of restraining a party to this Agreement from any continuing or threatened breach of this Agreement. The parties waive trial by jury in any action, proceeding or counterclaim brought by either of them against the other on all matters arising out of this Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and effective January 1, 2025.

Service Provider:

SERVECO NORTH AMERICA, LLC,
a Georgia limited liability company

By:____________________
Anthony Milano,
CEO

Company:

Premier Furniture Consultant, LLC

By:____________________
George Martinez
President